**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

JENNIFER L. JENKINS,

Plaintiff,

v.

LEARNING NETWORK LLC,

Defendant.

Case No. 6:26-cv-01098-AWM-BGS

**MEMORANDUM AND ORDER**

Plaintiff Jennifer L. Jenkins (Jenkins) sued Defendant Learning Network LLC (Learning Network), for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII),[1] and the Age Discrimination in Employment Act of 1967 (ADEA).[2] This matter is before the Court on Defendant's Motion to Stay Proceedings and Compel Arbitration. Doc. 18. Jenkins signed an employment agreement requiring arbitration, and she does not argue that her claims fall outside it. But two of the agreement's terms, a bar on punitive damages and a requirement that each party pay its own attorney's fees, would take away remedies that Title VII and the ADEA provide. The Court severs those terms, as both parties ask, and stays this case pending arbitration. The Court also compels arbitration in or near Denver, Colorado, as the agreement requires. And because the case is stayed, the Court denies Learning Network's pending motion to dismiss without prejudice.

---

[1] 42 U.S.C. § 2000e *et seq.*
[2] 29 U.S.C. § 621 *et seq.*

## I. FACTS AND PROCEDURAL HISTORY

Jenkins worked for Learning Network from August 19, 2024, until her termination on August 11, 2025. Doc. 19-1 at 1; Doc. 22 at 3. She alleges that Learning Network fired her for complaining about its discriminatory employment practices. Doc. 1 at 5. Before she started, Jenkins signed an employment agreement. Doc. 19-1 at 1. Paragraph 11 of the agreement provides the agreement "will be governed by the laws of the State of Colorado applicable to employment, and all controversies relating to it will be settled exclusively by final and binding arbitration held in or near Denver, Colorado[.]" *Id.* at 3. It adds that "[a]ll controversies, claims or disputes shall be resolved in the manner set forth herein in lieu of any action at law or equity[.]" *Id.* Paragraph 11 also provides that "[t]he arbitrator shall not have the right to award punitive damages" and that "[e]ach party shall be responsible for its own attorney's fees." *Id.* at 4. A separate "Prompt Action" paragraph requires that any claim "be commenced within six months after the claim arose or the claims shall be extinguished." *Id.* at 3 ¶ 10. And a severability clause provides that if any provision is held invalid or unenforceable, "this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein." *Id.* at 4 ¶ 13.

Learning Network moves to stay this case and compel arbitration. Docs. 18, 19. Jenkins opposes the motion or, alternatively, asks the Court to sever or construe six provisions before arbitration proceeds. Doc. 22.[3] Learning Network replies that any unenforceable remedial terms are severable. Doc. 24. Jenkins's brief quotes several provisions in language that does not appear in the agreement. *Compare, e.g.*, Doc. 22 at

[3] Because Jenkins proceeds pro se, the Court construes her filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of her advocate. *Id.*

17 (quoting a one-sentence "severability provision"), *with* Doc. 19-1 at 4 ¶ 13. The Court relies on the agreement's actual text, quoted above.

## II. LAW AND ANALYSIS

While the interpretation of contracts—including arbitration agreements—is generally a matter of state law, the Federal Arbitration Act (FAA) imposes rules beyond those found in state contract law. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010). The FAA applies to written arbitration agreements in any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Congress enacted the FAA "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985). The FAA reflects "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), but the policy is to make arbitration agreements "as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

Under the FAA, a court enforces an arbitration agreement—by staying the case, compelling arbitration, or both—if it finds that (1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of the agreement. 9 U.S.C. §§ 3–4. When determining the scope of an arbitration agreement, "[d]oubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960). And the FAA requires courts to enforce arbitration agreements according to their terms, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Paragraph 11 incorporates no arbitral rules and says nothing about who decides questions of arbitrability or enforceability, and neither party argues that those questions belong to the arbitrator. Doc. 19-1 at 3–4; *see* Doc. 22-2 at 1. The Court therefore decides them. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995); *see* Doc. 22 at 4.

**A. The Parties Entered into a Valid Arbitration Agreement**

Jenkins does not dispute that she signed the agreement or that it contains an arbitration provision. Doc. 22 at 3. The agreement is governed by Colorado law, Doc. 19-1 at 3, and under Colorado law, "[i]f the language is plain, clear, and unambiguous, a contract must be enforced as written." *Randall & Blake, Inc. v. Metro Wastewater Reclamation Dist.*, 77 P.3d 804, 806 (Colo. App. 2003); *see* Doc. 19 at 3–4. The agreement to arbitrate is valid.

**B. The Arbitration Agreement Covers Jenkins's Claims**

The arbitration clause is broad. It reaches "all controversies relating to" an agreement that governs the terms of Jenkins's employment, and it provides that "[a]ll controversies, claims or disputes" will be resolved through arbitration. Doc. 19-1 at 3. A broad clause creates a presumption of arbitrability, and the question is whether the dispute falls within it. *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261–62 (10th Cir. 2005); *see* Doc. 24 at 2–3. Jenkins claims that Learning Network discriminated and retaliated against her and then fired her. Those claims fall within the clause, and she does not argue otherwise. *See* Doc. 22; Doc. 24 at 3. Federal employment-discrimination claims, including claims under Title VII and the ADEA, may be arbitrated. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (ADEA); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th

Cir. 1994) (Title VII). And Jenkins is right that arbitrating those claims does not require her to give up the substantive rights the statutes provide; it changes only the forum in which she pursues them. Doc. 22 at 4; *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

### C. Federal Law Permits Jenkins to Seek Attorney's Fees and Punitive Damages in Arbitration

Jenkins notes that she seeks punitive damages, Doc. 1 at 6, and the arbitration agreement states the "arbitrator shall not have the right to award punitive damages or speculative damages to either party[.]" Doc. 19-1 at 4. But plaintiffs in Title VII actions may recover punitive damages against a private defendant if that defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). While punitive damages are unavailable for Jenkins's ADEA claims, *Bruno v. W. Elec. Co.*, 829 F.2d 957, 966 (10th Cir. 1987), the arbitration agreement's limitation on Jenkins's ability to seek punitive damages for Learning Network's alleged discriminatory practices contravenes federal law and is unenforceable. *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003).

Jenkins's reliance on *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003), Doc. 22 at 6, does not change that conclusion. *PacifiCare* compelled arbitration and left to the arbitrator the construction of remedial limitations whose meaning was uncertain. 538 U.S. at 406–07. Nothing is uncertain about the limitation here, which forbids any award of punitive damages. Doc. 19-1 at 4. And the agreement's choice of Colorado law does not change that result, because the standard for awarding punitive damages under

Title VII is governed by federal law. *Karnes v. SCI Colo. Funeral Servs.*, 162 F.3d 1077, 1079 (10th Cir. 1998).

Jenkins also argues that the agreement's requirement that "[e]ach party shall be responsible for its own attorney's fees," Doc. 19-1 at 4, conflicts with the fee-shifting provisions of Title VII and the ADEA. Doc. 22 at 7–9. Both statutes authorize an award of attorney's fees to a prevailing plaintiff. 42 U.S.C. § 2000e-5(k); 29 U.S.C. §§ 626(b), 216(b). "A review of Title VII indicates that attorney's fees are a critical part of a statutory framework intended to eradicate civil rights violations in this country." *Safranek v. Copart, Inc.*, 379 F. Supp. 2d 927, 931 (N.D. Ill. 2005). Enforcing an arbitration agreement that precludes an award of fees "effectively keeps plaintiffs from vindicating their rights under the federal statute and does not serve the remedial and deterrent purposes of the statute." *Id.* at 934. That Jenkins now represents herself does not change the analysis, because the provision would bar a fee award even if she retains counsel.

A party who arbitrates a federal antidiscrimination claim does not waive the statutory right to be free from discrimination. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265–66 (2009) *(citing Mitsubishi*, 473 U.S. at 628). An arbitration agreement "does not alter or abridge substantive rights; it merely changes how those rights will be processed." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022). And the arbitral forum must allow for the effective vindication of the plaintiff's statutory rights. *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1148 (10th Cir. 2014). The punitive-damages bar and the fee provision would strip Jenkins of remedies that Title VII and the ADEA provide, so they do not meet that standard.

### D. The Arbitration Agreement's Restrictions on Attorney's Fees and Punitive Damages Are Unenforceable and Are Severed

The agreement's severability clause provides that if any provision is held "invalid, illegal, or unenforceable in any respect," the agreement "shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein." Doc. 19-1 at 4 ¶ 13. Both parties ask the Court to apply it. Doc. 22 at 17–20; Doc. 24 at 4. Severing the two provisions leaves the agreement to arbitrate intact, and Learning Network remains obligated to pay the cost of the arbitrator. Doc. 19-1 at 4. The Court therefore severs the provisions barring punitive damages and requiring each party to bear its own attorney's fees and enforces the remainder of the arbitration agreement. *See Hadnot*, 344 F.3d at 478; *Safranek*, 379 F. Supp. 2d at 935.

### E. The Remaining Provisions Jenkins Challenges

Jenkins challenges four other provisions. Doc. 22 at 9–17. Two concern the timing and prerequisites of arbitration: the requirement that arbitration "be requested in writing not later than one year from the date the controversy arose," and the requirement that Jenkins first exhaust Learning Network's internal dispute-resolution procedures. Doc. 19-1 at 3. These are procedural questions that the parties presumptively intended an arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002); *see* Doc. 24 at 5. The Court leaves them to the arbitrator.

The six-month "Prompt Action" provision, Doc. 19-1 at 3 ¶ 10, raises a similar question. Jenkins argues that it conflicts with the administrative-exhaustion requirements of Title VII and the ADEA and asks the Court to construe or sever it. Doc. 22 at 9–11. Learning Network argues only that the provision does not prevent

arbitration. Doc. 24 at 4–5. Whether Jenkins's claims were timely under that provision goes to the merits of her claims rather than to the agreement to arbitrate, so the arbitrator should decide it in the first instance, and the Court expresses no view on how it should be resolved. *See Howsam*, 537 U.S. at 85.

Jenkins also asks the Court to clarify that the Colorado forum does not preclude remote participation. Doc. 22 at 14–15. Learning Network has said that it "would not object to remote appearances at arbitration, if available." Doc. 22-2 at 1; *see* Doc. 24 at 5. The Court notes that representation but leaves the conduct of the arbitration to the arbitrator.

Finally, Jenkins asks the Court to confirm that the agreement's choice of Colorado law governs only the interpretation of the agreement. Doc. 22 at 15–17. Because Jenkins's claims arise under Title VII and the ADEA, federal law governs their elements and the remedies available for them, and the agreement's choice of Colorado law does not displace it. *See Karnes*, 162 F.3d at 1079; *Mitsubishi*, 473 U.S. at 628.

**F. The Court Compels Arbitration and Stays the Case**

Learning Network also asks the Court to compel arbitration under 9 U.S.C. § 4. The agreement requires arbitration "in or near Denver, Colorado." Doc. 19-1 at 3. A district court generally lacks authority under § 4 to compel arbitration in another district. *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1220 (10th Cir. 2005). But that limit is a venue rule, not a jurisdictional one, and a party who does not raise it waives it. *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1051–52 (10th Cir. 2006) (holding that the parties waived any objection to a Colorado district court's order compelling arbitration in Ohio by not raising it); *see Sanchez*, 762 F.3d at 1152. Learning Network asked this Court to compel arbitration. Doc. 18. And although

Jenkins generally opposes the motion to compel arbitration and challenges the fairness of the Colorado forum, she does not contend that this Court lacks authority to order arbitration there. *See* Doc. 22 at 14–15.

Neither party has raised the § 4 venue limit, so it is waived, and the Court grants Learning Network's request. The parties shall arbitrate Jenkins's claims in or near Denver, Colorado, under the agreement as modified by this order. And because the case is stayed, Learning Network's Motion to Dismiss, Doc. 15, is denied without prejudice.

When a court finds that a dispute is subject to arbitration and a party requests a stay, § 3 of the FAA requires the court to stay the proceeding, not dismiss it. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Learning Network requested a stay. Doc. 18. The case is therefore stayed pending arbitration.

## III. CONCLUSION

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Stay Proceedings and Compel Arbitration, Doc. 18, is **GRANTED** as set out below. The provisions of paragraph 11 of the parties' agreement barring an award of punitive damages and requiring each party to bear its own attorney's fees are severed, and the remainder of the arbitration agreement is enforceable.

**IT IS FURTHER ORDERED** that the request for an order compelling arbitration under 9 U.S.C. § 4 is **GRANTED**. The parties shall arbitrate Jenkins's claims in or near Denver, Colorado, under their agreement as modified by this order.

**IT IS FURTHER ORDERED** that this case is **STAYED** pending arbitration under 9 U.S.C. § 3. Defendant's Motion to Dismiss, Doc. 15, is **DENIED WITHOUT PREJUDICE**. The parties shall file a joint status report every 180 days, beginning April

26, 2027, and a joint notice within 14 days after the arbitration concludes. Any party may then move to confirm, vacate, or modify an award, or for other appropriate relief.

**IT IS SO ORDERED.**

Dated this 26th day of October, 2026, at Topeka, Kansas.

*s/ Anthony W. Mattivi*
Anthony W. Mattivi
United States District Judge